THE STATE v. A. M. DAVIS, Appellant.

Division Two, May 14, 1907.

1. **CHANGE OF VENUE: Application Properly Overruled.** When the case was called for trial, the State announced ready, but defendant asked for time in which to prepare an application for a continuance, which was granted. While waiting for the supposed application for a continuance, the court learned that defendant was preparing an application for a change of venue, whereupon the court called the case for trial, and so notified the defendant, who, after the jury were sworn upon their *voir dire* and the State had finished its examination of the jurors, filed his application for a change of venue. *Held*, that the application was properly overruled.

2. **INSTRUCTION: Time When Offense Committed: Error in Defendant's Favor.** An instruction which limits the time within which the jury might find the offense to have been committed, to the year 1906, instead of within three years prior to the date of the filing of the information, though erroneous, is an error in defendant's favor, of which he cannot complain.

3. **GAMBLING: Crap Table: Sufficiency of Evidence.** Evidence held sufficient to support the verdict finding defendant guilty of setting up and operating a crap table for the purpose of playing games of chance for money and property.

Appeal from Jasper Circuit Court.— *Hon. Howard Gray*, Judge.

AFFIRMED.

*Clay & Sheppard* and *M. R. Lively* for appellant.

(1) When the defendant filed his application for a change of venue from the trial judge, he had no further jurisdiction in the case. R. S. 1899, sec. 2594; State v. Shipman, 93 Mo. 147; State v. Greenwade, 72 Mo. 304. (2) The court erred in giving instruction 2.

Under this instruction, if the jury should have found from the evidence that the defendant, in the county of Jasper and State of Missouri, set up and operated a certain gambling device, etc., just so it was prior to the 26th of February, 1906, they could find him guilty. The time should have been limited to three years previous to the time of filing the information.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for the State.

(1) No error was committed by the trial court in overruling defendant's application for a change of venue. It is hardly necessary to argue that this application came too late, especially as no notice was given to the State's counsel. (2) The evidence, and all the evidence, showed that the crime charged was committed during the month of February, 1906, and prior to the filing of the information, which was February 26, 1906. So the jury could not possibly have been misled; neither was it possible for the defendant to have been convicted of any crime committed prior to the time limited by the statute in such cases.

FOX, P. J.—From a judgment of the circuit court of Jasper county, Missouri, convicting him of setting up, keeping and operating a certain table and gambling device, commonly called a "crap table," devised and designed for the purpose of playing games of chance for money and property, defendant appeals. On February 26, 1906, the prosecuting attorney of Jasper county filed an information, and on March 6, 1906, he filed an amended information, duly verified, charging that the defendant on the — day of February, 1906, feloniously did set up, keep and operate a certain table and gambling device, commonly called a "crap table," which table was adapted, devised and designed for the purpose of playing games of chance for money and

property. At the March term, 1906, of the Jasper Cir-
cuit Court, and at the convening of court on the 14th
day of March, this being the first case on the docket
for that day, the State, by W. N. Andrews, prosecuting
attorney, announced ready for trial, but the defendant
announced that he was not ready and asked the court
to grant him time to prepare an application for a con-
tinuance. This request was granted. While waiting
for the supposed application for a continuance, the
court ascertained that the defendant was preparing an
application for a change of venue, whereupon the court
called the case for trial and so notified the defendant.
The jury was sworn to answer questions and the State
proceeded to make its examination and finished the
same, when the defendant filed the following applica-
tion and affidavits for a change of venue from the Hon.
Howard Gray, the trial judge of the Jasper Circuit
Court:

"State of Missouri, Plaintiff, vs. A. M. Davis, Defend-
    ant.
    "IN THE CIRCUIT COURT OF JASPER COUNTY, Mo.
        "March Term, at Carthage, 1906.
        "*Application for Change of Venue.*

"Comes now the defendant, A. M. Davis, and rep-
resents and shows to the court that he cannot safely
proceed to the trial of said cause where it is now pend-
ing in Division No. One of said court, the Hon. Howard
Gray, Judge, on account of the bias and prejudice of
said Hon. Howard Gray, and that he cannot have a fair
trial of said cause before said judge.

"Wherefore, he prays to have the change of venue
as by law provided.                    A. M. DAVIS.

"State of Missouri, County of Jasper, ss.

"I, A. M. Davis, being duly sworn, upon my oath
depose and say that I have read the foregoing applica-
tion for change of venue, and that the matters and

facts therein contained are true, and that the Hon. Howard Gray, Judge of Division No. One, is biased and prejudiced in said cause and I cannot have a fair trial of said cause before the Hon. Howard Gray.

"That said information of the bias and prejudice of the Hon. Howard Gray first came to this applicant since the adjourning of this court yesterday, Tuesday, the 13th day of March, 1906..        A. M. DAVIS.

"Subscribed and sworn to before me this 14th day of Mch., 1906.        A. F. CARMEAN, Clerk.
" (Seal.)        "By J. W. GRAY, D. C.
"State of Missouri, County of Jasper, ss.

"We, Bert Mann and Walter Miller, upon our oath depose and say that we have read and know the contents of the foregoing application for a change of venue, and that the same is true, and that we are residents and citizens of Jasper county, Mo., and are not of kin or counsel to the defendant.
        "BERT MANN,
        "WALTER MILLER.

"Subscribed and sworn to before me this 14th day of March, 1906.        A. F. CARMEAN, Clerk.
" (Seal.)        " By J. W. GRAY."

The court overruled this application, and in doing so made the following order:
"Now comes the defendant and files herein his application for a change of venue in this case. By consent the same is taken up, and being seen, heard and fully understood by the court, the same is overruled." To which action of the court the defendant objected and excepted at the time.

Whereupon, the defendant examined the jurors and proper challenges being made, the case proceeded.

The testimony upon the part of the State tended to show that Sheriff Marrs, Deputy Sheriff Marquiss and Deputy Sheriff Keir raided a certain room in the second story over the Woodbine saloon in the city of Joplin on one Saturday night in the month of February, 1906. Prior to forcing their way into said room, these officers went up in an alley, climed over a fence and got upon a flat roof of a one-story building and looked into the windows to see what was going on in said room. They saw a number of men up there, including the defendant, who were engaged in gambling. The defendant was standing behind a crap table, dealing craps, and several others were around the table on the outside, rolling two dice across the table. The defendant was paying the bets and cashing in the checks. The others were standing on the outside of the table and were placing their checks down on the table and rolling the dice. The table was identified by the officers as what is commonly termed a crap table, and was about four feet high with a railing around it about four or five inches high, and was eight feet long by three or four feet wide, and covered with a green cloth. On one side of the table, about the center thereof, there was a little space cut out, and in this space the defendant was standing while the game was in progress. On this table were numbers corresponding with numbers that can be made on a pair of dice, and on this particular table were 4, 5, 6, 8, 9 and 10. The word "come" was also printed on the table, and this word is one that is used by gamblers in playing said game of chance. Dice were also found on the table, and the defendant was seen catching the dice as others would throw them, and throwing them back to the player. The defendant was also seen dealing certain colored checks, round flat checks, which he gave in exchange for money. The officers further testified that the table which the defendant had charge of was the character of table devised, designed and made

for playing the game of craps, and was commonly term-
ed a "crap table." The defendant also had a little ball,
that looked like a half pool ball, which was used for
some purpose, not explained by the evidence in this
case.

The defendant offered no evidence.

At the close of the evidence the court instructed
the jury and the cause being submitted to them they
returned a verdict finding the defendant guilty and
assessing his punishment at two years imprisonment in
the State penitentiary. Motions for new trial and in
arrest of judgment being overruled, judgment of sen-
tence in accordance with the verdict was entered of
record, and from this judgment the defendant in proper
form and due time prosecuted his appeal to this court,
and the record is now before us for review.

OPINION.

The record before us in this case discloses, as here-
tofore indicated by the statement of the case, but one
legal proposition, that is, the propriety of the action of
the trial court in overruling defendant's application for
a change of venue. We have carefully considered the
disclosures of the record upon this question. It is
therein recited that, "at the convening of court on the
said 14th day of March, 1906, this being the first case
on the docket for that day, the State, by W. N. An-
drews, prosecuting attorney, announced ready for trial,
but the defendant announced that he was not ready
and asked the court to grant him time to prepare an
application for a continuance. This request was grant-
ed. While waiting for the supposed application for a
continuance, the court learned and ascertained that the
defendant was preparing an application for a change
of venue, whereupon the court called the case for trial,
and so notified the defendant. The jury was sworn to
answer questions and the State proceeded to make its

examination, and finished the same, when the defendant filed the following application for a change of venue.'' We omit reproducing the form of the application, as it has heretofore been inserted in the statement of the cause.

We deem it only necessary to say, upon this assignment of error as disclosed by the record, that the action of the trial court in overruling the application for a change of venue was proper. Learned counsel for appellant rely upon the conclusions reached in State v. Spivey, 191 Mo. 87, as supporting the contention in the case at bar. An examination of the Spivey case will demonstrate a very clear distinction between that case and the case now under consideration. While in the Spivey case there was no previous notice given that an application for a change of venue would be made, yet upon the day that the case was called for trial counsel presented an application and the prosecuting attorney appeared and resisted it and introduced testimony in respect to it. In this case, it was called for trial and the State announced ready; counsel for defendant asked the court for a little time in which to prepare an application for a continuance. The court very readily granted the request, but it seems, as shown by the record, that counsel, instead of preparing an application for a continuance, were preparing an application for a change of venue. No notice or even an intimation on the part of counsel had been made that an application for a change of venue would be presented, and when the court learned that counsel did not want time in which to prepare an application for a continuance, but an application along entirely different lines, doubtless concluded they were not availing themselves of the request it had so kindly granted and notified the defendant and proceeded to empanel the jury. It was clearly the duty of counsel, after making the request that they wanted time in which to file an appli-

cation for a continuance, if they had changed their views as to filing such application, and desired to file an application for a change of venue, to have at once notified the court of such change of views, and their failure to do so places them in no position to complain of the action of the court in promptly overruling the application for a change of venue. The witnesses had to be secured to support the application for a change of venue, and it can only be reasonably inferred that defendant's counsel knew at the time the case was called for trial that they were going to present an application for a change of venue, and if so it was their duty to frankly so state to the court. There was no error in overruling this application.

Appellant complains of instruction 2 given by the court. The criticism of this instruction is based upon the theory that the court failed to tell the jury that if they found that the defendant committed the offense at any time within three years before the date of the filing of the information, they would find him guilty. The instruction told the jury that "if they believed from the evidence in this case that the defendant, at the county of Jasper and State of Missouri, in the year 1906, and at any time therein prior to the 26th day of February, 1906, did wilfully, unlawfully and feloniously keep a certain gambling device and table, commonly called a crap table, and that the same was then and there a gambling device adapted, devised and designed for the purpose of playing games of chance for money or property," etc., they would find the defendant guilty. This error was clearly in favor of the defendant. It limited the time in which the jury might find the commission of the acts to the year 1906, when in fact the jury were at liberty to find that he committed them at any time within three years prior to the time of the filing of the information. The testimony clearly shows that the acts constituting the offense were committed in the

year 1906 and prior to February 26, of that year, and while this instruction is erroneous, it is not an error of which the defendant can complain.

The testimony of the State clearly supports the verdict of the jury, and finding no reversible error, the judgment of the trial court should be affirmed, and it is so ordered.

All concur.